## Wytheville.

LYLE, RECEIVER, v. SARVEY.

June 22, 1905.

1. EQUITY— *When Deposition May be Read—Delay in Taking.*—A party to a suit in chancery has no right to read depositions in his favor simply because they are filed before a final decree in the cause, or before an interlocutory decree adjudging the matter controverted by the depositions. Whether testimony delayed until the hearing will be heard must depend upon a sound judicial discretion to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of other circumstances. If the reading of the depositions would involve the continuance of a cause ready for hearing, a recommittal of a commissioner's report, a re-opening of the case for the introduction of other testimony, and a prolongation of the controversy, when the party making the motion has had abundant opportunity to take his proof, and has, without good cause, failed to do so, the depositions should be excluded. This is especially true where the court is dealing with its own receiver.

2. RECEIVERS— *Obedience to Orders—Promptness.*—A receiver is the hand of the court, and it is his duty to yield prompt and unquestioned obedience to all its lawful decrees. The court cannot tolerate a practice which renders it as difficult to compel the disbursement of funds in the hands of its receiver as to enforce the collection of a controverted demand.

3. EQUITY PRACTICE— *Distribution of Funds—Form of Decree—Amounts— Dates.*—In disbursing funds to creditors the decree should specify the amount decreed to each creditor, and the date from which interest is to be computed.

Appeal from a decree of the Corporation Court of the city of Roanoke in a suit in chancery. Decree in favor of creditors against the receiver of the court. Receiver appeals.

*Reversed in part.*

The opinion states the case.

*William A. Glasgow, Jr., Hart & Hart* and *John Dabney Smith,* for the appellant.

*Smith & King* and *H. T. Hall,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The primary purpose of this suit was to wind up the affairs of the Charles Lyle Drug Company, a corporation engaged in the retail drug business in the city of Roanoke, to pay its indebtedness, and distribute the surplus assets among the stockholders.

The plaintiff, Mrs. A. E. Sarvey, and her two sons, Charles and Edward Lyle, constituted the principal stockholders. Charles Lyle was a druggist, and the president and general manager of the company, and Edward Lyle the attorney who brought the suit, representing both plaintiff and defendant. The creditors were neither made parties nor informed of the litigation.

In the petition and answer of the company to the bill, by Charles Lyle, its president, the assets were estimated at $9,930 and the liabilities at $2,000. It was also averred that the president and general manager had tendered his resignation, and the defendant united in the prayer of the bill for the immediate appointment of Edward Lyle as receiver. The answer was accompanied by the affidavit of Edward Lyle, that the corporation was solvent "and possessed of assets sufficient to pay. all its creditors in full." Upon the same day the judge of the Hustings Court made an order appointing Edward Lyle receiver, and requiring him to execute bond with approved security in the penalty of $6,000. He was directed to collect the assets of the company, and sell the stock and fixtures to the best advantage; to pay the expenses incident to the receivership; to rent the necessary buildings to preserve the property until sold; and also to report, from time to time, his proceedings as receiver.

Within a short time after the date of this order a number of creditors of the company intervened, and at their instance the cause was referred to a commissioner to take an account of debts and assets, and report any other matter deemed pertinent.

On May 22, 1903, the commissioner returned his report, in which he says the receiver had neglected to furnish a statement of his transactions, although repeatedly requested and repeatedly promising to do so. At the request of the creditors, he made up his report in the absence of such statement, returning therewith a copy of a letter written by the receiver to counsel, under date of December 7, 1900, admitting that he had taken possession of the stock of goods of the company of the inventoried value of $3,721.32, and open accounts due the company to the amount of $2,500, of which he thought $1,000 could be reasonably expected to be collected. The commissioner reported the debts proved, but did not report what assets had come into the hands of the receiver. Therefore, on February 14, 1903, the report was recommitted to another commissioner, who returned his report September 19, 1903, in which he charged the receiver with $3,721.32, the inventoried value of the stock of goods, and $1,000 in open accounts. He also reported that the White Front Pharmacy was really the property of the defendant company. With respect to the conduct of the receiver, the commissioner reports that he had used every means given him by the law to compel the production of books and papers of the Charles Lyle Drug Company and the White Front Pharmacy, without avail; that counsel for the receiver stated that he would close his account by July 25, but failed to do so, and the commissioner kept the account open until September 19, 1903, relying upon the continued promises of the receiver to produce the books, together with the statement of his accounts as receiver; when, finding that further indulgence would be fruitless, he returned his report.

On December 30th following, the receiver, over the objection of creditors, gave his deposition in the cause, the object of which was to extenuate his conduct in failing to settle his accounts, and to reduce his liability as ascertained by the report of the commissioner.

At the final hearing of the cause, April 30, 1904, the court sustained the motion of creditors to suppress the deposition of the receiver, and, overruling his exceptions to the report (save only to so much thereof as ascertained the White Front Pharmacy to be the property of the defendant company), confirmed the report, and directed the receiver to pay the debts established thereby. From that decree this appeal was allowed.

The bare recital of the foregoing facts would seem to afford complete justification for the action of the court. In his belated deposition the receiver undertakes to excuse his flagrant neglect of duty to make reports, as required by law and the order appointing him, on the grounds that during his receivership his time was engrossed with public duties as State senator, and the continued absence from the State of his brother, Charles Lyle, who was engaged as a traveling salesman, and who, by reason of his position of president and general manager of the company, was familiar with its affairs.

When it is remembered that about three years had elapsed between the appointment of the receiver and the final settlement of his account by the commissioner, it is not surprising that the court declined to accept these frivolous excuses and refused to grant the receiver further indulgence.

The statute under which he claims the right to have his rejected deposition read is as follows:

"In a suit in equity, a deposition may be read, if returned before the hearing of the cause, or, though after an interlocutory decree, if it be as to a matter not thereby adjudged, and be returned before a final decree." Va. Code, 1904, sec. 3362.

In construing that statute this court observes: "But the right is not an absolute one. The statute does not say the deposition

shall be, but it *may* be read. It could hardly have been intended that after a cause had been referred to a commissioner and ample opportunity offered both parties to introduce their witnesses, and after the commissioner had made his report and the cause was ready for a hearing, that one of them should have the absolute right at any time thereafter to bring forward his testimony, deliberately or negligently withheld without cause from the commissioner, and demand it shall be read upon a controverted matter of fact, passed upon by the commissioner and made the subject of the report. Such a construction would be but a premium for negligence, and would place in the power of one or the other of the parties, in many cases, to protract litigation almost indefinitely. Whether testimony thus delayed will be heard must in every case depend upon a sound judicial discretion to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of circumstances which must be adjudged as they arise. The maxim that the laws assist those who are vigilant, not those who sleep over their rights, applies not only to the operation of statutes, but to the action of suitors in the conduct of their suits. In the case before us, the reading of the appellees' depositions would have involved a continuance of the cause when it was ready for a hearing, a recommittal of the commissioner's report, and a reopening of the case for the introduction of other testimony, and a prolongation of the controversy. The adoption of such a rule would not only be unjust in this particular case, but it would furnish an extremely bad precedent in other cases." *Richardson* v. *Duble,* 33 Gratt. 730, 740.

The pertinency of the language of the learned judge in the case above cited to the facts of this case warrants the extended quotation from his excellent opinion. Indeed, the views therein expressed apply with stronger reason to this case, where the court was dealing with its own receiver.

The evidence was ample to sustain the findings of the commissioner. The receiver had already in the pleadings, pre-

pared by himself as counsel, in his affidavit to the answer, and in his letter to counsel for creditors, solemnly admitted that the assets were sufficient to discharge all liabilities of the company; and, after having persistently disobeyed the orders of the court, and neglected to avail himself of two opportunities of settling his account before its commissioners, when the cause was ready for final hearing, to have granted further delay would have been an abuse rather than a proper exercise of the court's discretion under the statute invoked, and would have tended to bring reproach upon the administration of justice. In dealing with receivers the court cannot tolerate a practice which would place them on the footing of ordinary debtors, and render it as difficult to compel the disbursement of funds in their hands as to enforce the collection of a controverted demand. A receiver is the hand of the court, and it is his duty to yield prompt and unquestioned obedience to all its lawful decrees.

It follows from these views that the rulings of the trial court complained of by appellant are without error, and the decree in that aspect of the case must be affirmed.

Under Rule IX., appellees assign as cross-error the action of the court in sustaining the exception of appellant to that part of the last report in the cause which ascertained that the White Front Pharmacy was the property of the Charles Lyle Drug Company.

The evidence upon which that finding was founded may be summarized as follows: The license was originally, and for several years thereafter, taken out in the name of the Charles Lyle Drug Company, and the store in which the business was conducted was leased to that company until December 1, 1900. Executions in the hands of the sergeant of Roanoke, prior to and at the time of the institution of this suit, against the Charles Lyle Drug Company, were levied indifferently upon the goods in both stores, and the receiver on May 2, 1902, told the sergeant that the branch store was the property of the defendant company. He furthermore informed that officer, to whose hands

the estate of his mother, Mrs. A. E. Sarvey, deceased, was committed for administration, that although the business of the White Front Pharmacy, at one time, had been conducted in the name of his mother, she neither owned it nor knew that it was in her name. This statement was made after the death of Mrs. Sarvey when the sergeant applied to Edward Lyle for the assets to pay the debts of the White Front Pharmacy. Both stores were under the general management of Charles Lyle, and the employees understood that the branch store belonged to the Charles Lyle Drug Company. It also appears that when the White Front Pharmacy was sold by Charles Lyle the cash payment and notes were made to Edward Lyle. There was other evidence tending to establish the Charles Lyle Drug Company's ownership of the branch store; and, taken as a whole, the evidence was quite sufficient to sustain the report of the commissioner in that regard.

The decree in that respect is, therefore, erroneous and must be reversed, and the cause remanded for further proceedings to be had therein, not in conflict with this opinion; and in future decrees providing for the payment of demands against the company, the amount of each demand, with the date from which interest is to be computed, should be specifically set forth. *Spoor* v. *Tilson,* 97 Va. 279, 33 S. E. 609; *People's National Bank* v. *Virginia Textile Co., ante,* p.——, 51 S. E. 155.

*Reversed in part.*